IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.	21-MJ-856 SMV

GUSTAVO ALONSO RAMOS-CABALLERO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

    This matter comes before the Court upon Defendant's Notice of Appeal of Detention Order (Doc. 16).  The Notice of Appeal of Detention Order is now fully and timely briefed.  *See* (Docs. 20 and 22).  A video conference hearing was held in this matter on August 5, 2021.  Rachel Marie Feuerhammer represented the United States at the hearing and Danielle Phillips represented Defendant, who was present by video and knowingly waived his right to be physically present for the hearing.  *See* (Doc. 18).  United States Probation Officer Monica Hoyle was also present at the hearing.

    The Court notes that the parties did not introduce any evidence at the hearing but the parties made proffers in writing and in open court.  The parties did not object to the Court accepting the proffers of evidence without any need for additional evidence or testimony.

    Having considered the Notice of Appeal of Detention Order, the briefing, the Criminal Complaint (Doc. 1), the Order of Detention (Doc. 15), the Amended Pretrial Services Report (Doc. 11), Defendant's Notice of Declaration (Doc. 12), the transcript of the detention hearing (Doc. 21), and the argument of counsel at the video conference hearing, the Court denies the Notice of Appeal of Detention Order, and orders that Defendant remain under pretrial detention.

I. *Standard of Review and Applicable Law*

I. *Standard of Review and Applicable Law*

"The standard of review for the district court's review of a magistrate judge's detention or release order under [18 U.S.C.] § 3145(a) is de novo." *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003). "A defendant may be detained pending trial if a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Mobley*, 720 Fed. Appx. 441, 444 (10th Cir. 2017) (citing 18 U.S.C. § 3142(e)(1)). "The government bears the burden of proving risk of flight by a preponderance of the evidence and dangerousness to any other person or the community by clear and convincing evidence." *Id.* (citing *Cisneros,* 328 F.3d at 615).

In deciding whether to release or detain a defendant pending trial when a crime of violence is not charged,[1] Section 3142(g) provides various factors for the court to consider:

> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
> > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

---

[1] When a crime of violence is charged, "a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community…." 18 U.S.C. § 3142(e)(2).

The Court further notes *Johnson v. Guzman Chavez*, a recent United States Supreme Court case deciding which federal immigration law provision authorizes the United States to detain aliens during the removal process when the aliens "were removed from the United States but later reentered without authorization, were subject to reinstated orders of removal, and then sought withholding of removal based on fear of persecution in the particular countries designated by their removal orders." *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2280 (2021).  In discussing that issue, Justice Samuel Alito observed, "Aliens who have not been ordered removed are less likely to abscond because they have a chance of being found admissible, but aliens who have already been ordered removed are generally inadmissible." *Id.* at 2290.  Justice Alito further observed that "aliens who reentered the country illegally after removal have demonstrated a willingness to violate the terms of a removal order, and they therefore may be less likely to comply with the reinstated order." *Id.*  The question in *Johnson* and the question here under Section 3142(g) are distinct.  Nonetheless, Justice Alito's common-sense observations generally are helpful in determining whether courts should detain defendants prior to trial.  Even so, the Court reiterates that defendants, who are aliens and who reentered the country illegally after removal, are not categorically subject to detention.  The Court considers each defendant's situation as required under Section 3142(g).

II. Findings

   A. *Nature and Circumstances of the Offense Charged*

Defendant is charged with reentry after a deportation based on a conviction for the commission of an aggravated felony.  *See* 8 U.S.C. § 1326(a)(1) and (b)(2). Specifically, on July 7, 2011, in King County, Washington, Defendant pled guilty to a felony offense of assault in the second degree and was sentenced to 13 months imprisonment and 18 months of probation.  (Doc.

3

11) at 5.  Subsequent to that conviction, Defendant was removed from the United States to Mexico on November 13, 2014.  *Id.*

On June 17, 2021, United States Border Patrol Agents encountered Defendant in Grant County, New Mexico.  (Doc. 1) at 1.  Defendant did not cross the border from Mexico through a lawful port of entry.  *Id.*  When asked about his citizenship by United States Border Patrol Agents, Defendant responded "he was a citizen of Mexico illegally present in the United States."  *Id.*  "There is no evidence to show that the [D]efendant has applied for or received permission from the proper authorities to be or remain in the United States."  *Id.* at 2.

The nature and circumstances of the offense charged, reentry, by its nature involves the willful failure to comply with the authority of the United States and with court orders.  To the extent Defendant has been removed multiple times, Defendant has shown a flagrant disregard of court orders.

    B.  *Weight of the Evidence Against Defendant*

On November 13, 2014, Defendant was removed from the United States to Mexico subsequent to a felony conviction for assault in the second degree, an aggravated felony.  Defendant later reentered the United States without "the consent of the appropriate authority of the United States to reapply for admission into the United States…."  (Doc. 1) at 1.  On June 17, 2021, United States Border Patrol Agents encountered Defendant in Grant County.  Upon questioning by the United States Border Patrol Agents about his citizenship, Defendant admitted that he is a Mexican citizen "illegally present in the United States."  *Id.*  These facts weigh heavily against Defendant.

### C. History and Characteristics of Defendant

Defendant, age 30, was born in Mexico. (Doc. 11) at 2. Various family members live in Seattle, Washington, but Defendant has only sporadic contact with two of them. *Id.* Defendant immigrated to the United States when he was 7 years old and lived in California for a year. *Id.* Defendant also lived with his family in Seattle for 12 years. *Id.* When Defendant was 20 years old, he was deported to Mexico. *Id.*

Defendant has been in a relationship with Perla Villalobos-Rodriguez for four years and they have a two-year old child. *Id.* Defendant, however, declines to disclose the location of his partner/wife and child, whether they are in the United States or in Mexico. Defendant also declines to answer where he currently resides although "arresting documents" indicate that Defendant lives in Mexico. *Id.*

Defendant's family and community ties to the United States are a neutral factor at best. While Defendant has family in the United States, it is not sufficiently clear whether the ties to those family members are sufficiently strong to mitigate any risk of flight. On the other hand, the Court infers from Defendant's reluctance to disclose the whereabouts of his partner/wife and child that they reside in Mexico. The presence of Defendant's partner/wife and child in Mexico increases significantly the risk that Defendant will flee to join them.

The Court further notes that, at age 19, Defendant was arrested on December 22, 2010, in Washington state, on a charge of third-degree rape. *Id.* at 5. Defendant, however, pled guilty to second-degree assault on July 7, 2011, a felony offense for which he was sentenced to 13 months imprisonment and 18 months probation. *Id.* While this conviction is approximately 10 years old, the violent nature of the offense warrants serious consideration.

On June 12, 2012, at age 21, Defendant was arrested in Arizona by Customs and Border Protection for reentry of a removed alien and subsequently convicted of that offense. *Id.* On October 22, 2012, Defendant was sentenced to a 33-month term of imprisonment, with credit for time served, to be followed by 3 years of supervised release. *Id.* On November 3, 2014, Defendant was arrested by immigration officials in North Carolina for Alien Inadmissibility and removed again to Mexico on November 13, 2014. *Id.* Finally, Defendant was arrested on June 17, 2021, for the current reentry offense. (Doc. 1) at 1.

The above history of removals and reentries indicates, by a preponderance of the evidence, that Defendant is a flight risk. Such a history shows that Defendant is incapable of complying with the orders of the Court or the authority of the United States, and that Defendant remains undeterred from violating court authority.

In addition to the above factors, the Court considers Defendant's argument that he returned to the United States with the intention of seeking asylum under the Convention Against Torture. In the context of this appeal only, the Court notes that Defendant did not proffer any evidence to establish a reasonable fear and sincere intention to seek asylum under the Convention Against Torture. Notably, Defendant did not enter the United States through a lawful port of entry where he could claim such an asylum. Moreover, Defendant failed to assure the Court that he would not possibly flee to some other place that is not the place of the purported danger in Mexico. The Court remains unpersuaded that this argument favors Defendant's release.

## III. Conclusion

Weighing the Section 3142(g) factors, in particular the weight of the evidence, ties to Mexico, and Defendant's history of willfully violating orders of the court and the authority of the

United States, the Court concludes that a preponderance of the evidence shows that Defendant is a flight risk and no condition or combination of conditions will reasonably assure his appearance as required.

IT ORDERED that

1. Defendant's Notice of Appeal of Detention Order (Doc. 16) is denied; and

2. Defendant will remain under pretrial detention.

_____
UNITED STATES DISTRICT JUDGE